UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE DEVOE,

       Plaintiff,

v.                             Case No. 05-71863
                                 Honorable Patrick J. Duggan

OFFICER THOMAS REBANT, OFFICER
ANDREW WOOD, OFFICER STEPHAN
SOMMERFELD, and the CITY OF EASTPOINTE,

       Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 13, 2006.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

     This lawsuit arises from an incident on November 6, 2004, when City of

Eastpointe Police Officers Thomas Rebant, Andrew Wood, and Stephan Sommerfeld

stopped and subsequently arrested Plaintiff Terrance DeVoe ("Mr. DeVoe").  Mr. DeVoe

alleges the following claims against Defendants: (1) unlawful stop, arrest, and use of

unreasonable force in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth

Amendments of the United States Constitution (Count I); (2) state law claims of false

arrest, battery, gross negligence, negligence, and intentional infliction of emotional

distress (Count II); and violation of Michigan's Ethnic Intimidation Statute, MICH. COMP. LAWS ANN. § 750.147b.  Presently before the Court is Defendants' Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, filed December 14, 2005.  The Court held a hearing on Defendants' motion on February 8, 2006.

## I.     Factual Background

Mr. DeVoe is a police officer for the City of Detroit, residing in Eastpointe, Michigan.  On November 6, 2004, at 12:30 a.m., he was rearranging the tools he kept in his truck in order to hide them from view.  At the time, the truck was parked in the street in front of Mr. Devoe's house.

At the same time, the Eastpointe Police Department received a 911 call from a resident reporting a "suspicious occupied vehicle" outside her residence at Lincoln and Normandie, which is located a few blocks from Mr. DeVoe's home.  As Defendant Officers Rebant and Wood (in one patrol car) and Chamberlain (in another patrol car) proceeded to investigate the 911 call, they passed Mr. DeVoe's house and noticed a man (Mr. DeVoe) in dark clothes removing items from a parked vehicle.

As the area was a "high-crime district," known for vehicle thefts and thefts from vehicles, Officer Rebant decided to investigate.  *See* Mot. Ex. 4 ¶ 6; Ex. 3.  According to Officer Rebant, he wanted to determine if the man owned the vehicle and/or lived in the area.  *See id*. ¶ 7.  The officers therefore made a u-turn and returned to the area where Mr. DeVoe's truck was parked.

2

As the officers pulled their patrol car up to Mr. DeVoe's truck, Mr. DeVoe was standing near the driver door holding a briefcase and a plastic bag.  *See id*. Ex. 1 at 84; Ex. 5 (in-car video tape).  While in his patrol car, Officer Rebant asked Mr. DeVoe to "come here."  *See id*. at 88.  According to Officer Rebant, Mr. DeVoe responded verbally with an expletive and walked away.[1]  *See id*. Ex. 4 ¶ 7; *see also* Ex. 5. Officer Rebant followed Mr. DeVoe, asking Mr. DeVoe for his identification several times.  *See id*. Ex. 4 ¶ 8; Ex. 1 at 101-04; Ex. 5.  Mr. DeVoe refused to comply, at one point telling Officer Rebant "I ain't giving you nothing, I ain't giving you a damn thing."  *See id*. Ex. 5.

When Mr. DeVoe reached the side door of his house, Officer Rebant stepped between Mr. DeVoe and the door and again asked for Mr. DeVoe's identification.  *See id*. Ex. 4 ¶ 8; Ex. 1 at 101-04.  Mr. DeVoe responded: "I'm not giving you a damned thing," "this is bullshit," and "go ahead lock me up."  *See id*. Ex. 5; Ex. 1 at 102.  During their exchange, Officer Rebant explained to Mr. DeVoe that  he was conducting  an investigation into a suspicious occupied vehicle and asked Mr. DeVoe for his identification at least five times.  *See*  Ex. 4 ¶ 9; Ex. 5.  Eventually Officer Rebant handcuffed Mr. DeVoe and escorted him to the patrol cars parked on the street.  *See id*. ¶ 10-11; Ex. 1 at 106-08.

Either before or after he was handcuffed, Mr. DeVoe identified himself as a

---

[1]Mr. DeVoe testified that he ignored the officer and proceeded to walk up his driveway toward his house.  *See id*. at 89.   In the video, however, Mr. DeVoe clearly is saying something to the officers, although the tape did not capture any audio at this point. *See* Mot. Ex. 5.

3

Detroit Police Officer and informed the officers that he was carrying a gun.  *See id.* ¶ 11; Ex. 1 at 109-10.  Officer Rebant retrieved the gun, gave it to Officer Wood, and then told Mr. DeVoe to get into the rear seat of the police car.  *See id.* ¶ 11-12; Ex. 1 at 110-11. Mr. DeVoe refused and told the officers to call a supervisor.  *See id.* Ex. 1 at 111.  Officer Rebant thereafter asked Mr. DeVoe to get into the police car at least eleven times.  *See id.* Ex. 5; Ex. 4 ¶ 13.  Mr. DeVoe continued to refuse, telling the officers to call their supervisor and that he "ain't sitting nowhere."  *See id.* Ex. 5.  According to the officers, Officer Rebant then attempted to physically move Mr. DeVoe into the police car.  *See id.* Ex. 4 ¶ 14; Ex. 6 ¶ 6.  When Mr. DeVoe resisted, Officer Sommerfeld administered a short "drive stun" with his taser gun to Mr. DeVoe's lower right back.  *See id.*; Ex. 1 at 115-16.  At that point, Mr. DeVoe voluntarily sat down inside the patrol car.  *See id.* at 116.

The officers drove Mr. DeVoe to the Eastpointe Police Department.  *See id.*  After being issued a citation for "hindering and obstructing"[2] and resisting arrest, Mr. DeVoe was released.  *See* Mot. Ex. 7.  On February 17, 2005, Mr. DeVoe pled *nolo contendere* to the charge of hindering and obstructing in state court and the resisting arrest charge was dismissed.  *See id.* Ex. 8.  The state court sentenced Mr. DeVoe to twelve months of "non-reporting probation."  *See id.*  Mr. DeVoe filed the pending lawsuit on May 11,

---

[2]The citation refers to "hindering and obstructing" but fails to specify whether Mr. DeVoe is being cited for a violation of Michigan law or Eastpointe Ordinance 658.03.  In his police report, however, Officer ReBant indicates that he arrested Mr. DeVoe pursuant to Eastpointe's local ordinance.  *See* Mot. Ex. 4.

4

2005.

## II.      Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

Where the non-moving party would have the burden of proof at trial, the moving party ". . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is

5

insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

**III.   Applicable Law and Analysis**

As an initial matter, in his response to Defendants' motion for summary judgment, Mr. DeVoe concedes that his state law tort claims against the City of Eastpointe are barred by Michigan's Governmental Tort Liability Act, MICH. COMP. LAWS ANN. § 691.1407. *See* Resp. at 3. Mr. DeVoe further concedes that his Fourth and Fourteenth Amendment claims based on his stop and arrest are precluded by his *nolo contendere* plea in state court. *See id.* At the hearing on Defendants' motion, Mr. DeVoe's counsel also indicated that Mr. DeVoe no longer is pursuing any constitutional claims against the City. The Court therefore will dismiss those claims.

**A.   State Law False Arrest Claim**

While Mr. DeVoe concedes that his federal constitutional claims alleging wrongful stop and seizure are precluded by his *nolo contendere* plea, it appears that he believes the plea does not preclude his state law false arrest claim, as he spends several pages in his response brief attempting to demonstrate that the officers lacked sufficient reasonable

suspicion to stop him initially and lacked probable cause to place him under arrest.[3]  This Court believes that Mr. DeVoe's plea also bars his state law false arrest claim.

Under Michigan law, a false arrest is an illegal or unjustified arrest. *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18, 672 N.W.2d 351, 362 (2003)(citing *Lewis v. Farmer Jack Div., Inc.*, 415 Mich. 212, 218, 327 N.W.2d 893 (1982)).  "To prevail on a claim of false arrest, a plaintiff must show that the arrest was not legal, i.e. the arrest was not based on probable cause." *Id.*  Under Michigan law, "[p]robable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed or is being committed." *Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002)(quoting *People v. Champion*, 452 Mich. 92, 115, 549 N.W.2d. 849, 860 (1996)).

This Court must give the same preclusive effect to state court judgments that those judgments would receive in courts of the rendering state.  *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999).  Under Michigan law, it is well established that a conviction, unless procured by fraud or unfair means, is conclusive evidence of probable cause.  *Moore v. Mich. Nat'l Bank*, 368 Mich. 71, 73-74, 117 N.W.2d 105, 106 (1962)(dismissing the plaintiff's malicious prosecution claim because the plaintiff's guilty

---

[3]In addition to arguing that the officers lacked probable cause to arrest him for hindering and obstructing, Mr. DeVoe contends that the initial stop was unlawful and therefore his subsequent arrest was unlawful.

plea rendered it factually impossible for him to demonstrate that the defendant lacked

probable cause); *see also Killian v. Fuller*, 162 Mich. App. 210, 215, 412 N.W.2d 698,

700 (1987)(citing *Piechowiak v. Bissell*, 305 Mich. 486, 497, 9 N.W.2d 685

(1943))(same).  This general rule applies to convictions resulting from a guilty plea.

*Blase v. Appicelli*, 195 Mich. App. 174, 178, 489 N.W.2d 129, 131-32 (1992)(citing

*Killian*, 162 Mich. App. at 214, 412 N.W.2d at 700).  While this Court was not able to

locate a Michigan court decision applying this rule in the case of a *nolo contendere* plea,

a plea of *nolo contendere* is materially indistinct from a guilty plea under Michigan law.

*People v. New*, 427 Mich. 482, 493, 398 N.W.2d 358, 363 (1986).[4]  Courts in this Circuit

have held that a defendant's *nolo contendere* plea in state court precludes the individual

from later asserting, as a plaintiff in federal court, that officers lacked probable cause to

arrest and that therefore the plaintiff's Section 1983 and state law unlawful arrest claims

---

[4]In *New*, the Michigan Supreme Court held that a defendant's *nolo contendere* plea
has the same effect as a guilty plea and therefore ruled that the plea barred the defendant's
challenge to the trial court's rejection of his motion to suppress evidence.  As the
Michigan Supreme Court stated:

> Since a plea of nolo contendere indicates that a defendant
> does not wish to contest his factual guilt, any claims or
> defenses which relate to the issue of factual guilt are waived
> by such a plea.  Claims or defenses that challenge a state's
> capacity or ability to prove defendant's factual guilt become
> irrelevant upon, and are subsumed by, a plea of nolo
> contendere.

427 Mich. at 493, 398 N.W.2d at 363.  In other words, "[t]he plea indicates a defendant's
desire not to contest the issue of his factual guilt.  It is an admission of all the essential
elements of the charged offense."  *Id*. at 493 n.10, 398 N.W.2d at 363 n.10.

8

are barred. *Walker v. Shaffer*, 854 F.2d 138, 142 (6th Cir. 1988)(holding that the

plaintiffs' nolo pleas in state court precluded their Fourth Amendment Section 1983

claims); *Joy v. Dayton*, No. C-3-90-132, 1991 WL 1092505, at *5-6 & 11 (S.D. Ohio

June 28, 1991)(unpublished op.)(holding that the plaintiff's nolo plea barred his federal

and state law claims alleging false arrest).  The Court therefore concludes that plaintiff's

false arrest claim is barred by his *nolo contendere* plea.

  But even if Mr. DeVoe's plea is not a bar to his false arrest claim, the Court finds

that defendants are entitled to summary judgment because they had reasonable suspicion

for initially stopping Mr. DeVoe and probable cause to subsequently arrest him.  Pursuant

to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), a police officer "can stop and briefly

detain a person for investigative purposes if the officer has a reasonable suspicion

supported by articulable facts that criminal activity 'may be afoot,' even if the officer

lacks probable cause."  *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585

(1989)(citing *Terry*, 392 U.S. at 30, 88 S. Ct. at 1884-85); *see also United States v. Hurst*,

228 F.3d 751, 756-57 (6th Cir. 2000).   The totality of the circumstances must be

considered in evaluating the validity of a stop.  *Id*. at 8, 88 S. Ct. at 1585.  The stop must

be limited in duration and scope, during which time the police officer may ask a limited

number of questions to determine the suspect's identity and to try to obtain information

confirming or dispelling the officer's suspicions.  *United States v. Fountain*, 2 F.3d 656,

664 (6th Cir. 1993)(quoting *Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138 (1984)).

  In this case, the officers were responding to a 911 call regarding a suspicious

occupied vehicle at 12:38 a.m.  The area was known for its high rate of automobile thefts and thefts from automobiles.  While the resident who called 911 described the suspicious vehicle as a red car that looked "to be like a Grand Am," *see* Reply Ex. 13, there is no evidence as to whether this information was provided to the officers by the dispatcher.[5]  A few blocks from the area where the suspicious automobile was reportedly located, the officers observed a man in dark clothing removing items from a parked vehicle.  According to Officer Rebant, he intended to conduct a brief investigation in order to determine the identify of the individual and whether the truck belonged to the individual and/or whether he lived in the area.

Under these circumstances, the Court believes that the officers had a reasonable suspicion that criminal activity– i.e. theft from an automobile– was afoot.  In light of these circumstances, it was reasonable for the officers to stop and ask the individual to identify himself.  After the officers lawfully stopped Mr. DeVoe, his refusal to provide identification and cooperate provided probable cause to arrest him for hindering and obstructing in violation of Michigan Compiled Law Section 750.479 and/or Eastpointe Ordinance 658.03.

Eastpointe Ordinance 658.03 provides in relevant part that "[n]o person shall resist, hinder or abuse any police officer in the performance and execution of his or her

---

[5]In any event, if the officers suspected Mr. DeVoe of stealing items from the vehicle or attempting to steal the vehicle, the Court does not believe that the color and make of the suspicious occupied vehicle would be relevant to the officers' assessment of the situation.

office."  As amended in July 2002, Michigan Compiled Law Section 750.479 makes it unlawful for a person to *inter alia* "obstruct . . . [an] officer . . . acting in the performance of his or her duties" and defines the word "obstruct" as including a "knowing failure to comply with a lawful command."  MICH. COMP. LAWS ANN. § 750.479.  Prior to the Michigan legislature's amendment of the statute, the Michigan Supreme Court held that nonphysical interference with an officer engaged in his or her lawful duties did not constitute obstruction in violation of the statute.[6]  *People v. Vasquez*, 465 Mich. 83, 631 N.W.2d 711 (2001)(holding that the defendant's lying to an officer  about his name and age "did not physically interfere with or threaten to physically interfere with the officer" and thus did not "obstruct" the officer in the performance of his duties).  By modifying the statute, particularly by defining "obstruct" to include a "knowing failure to comply with a lawful command," the Court believes the legislature intended the statute to specifically encompass nonphysical– for example verbal– interferences with an officer's performance of his or her duties.  Notably, in analyzing an East Lansing "obstruction" ordinance with language similar to Section 750.479 and the Eastpointe Ordinance[7], the

_____

[6]Mr. DeVoe relies on Judge Gerald Rosen's decision in *Marrs v. Tuckey*, 362 F. Supp. 2d 927, 942 (E.D. Mich. 2005), where Judge Rosen held that the plaintiff's refusal to identify herself to police officers did not violate Section 750.479.  Although decided in 2005, *Marrs* arose out of the plaintiff's arrest in January 2002– i.e. before the statute was amended. *Id*. at 930.  As Judge Rosen noted, he analyzed whether plaintiff's conduct was prohibited based on what the statute provided "at the time." *Id*. at 939-40.  Thus the Court does not find Judge Rosen's decision relevant to the case at hand.

[7]The East Lansing ordinance makes it a misdemeanor to "[a]ssault, obstruct, resist, hinder, or oppose any member of the police force . . . in the discharge of his/her duties as

Sixth Circuit found that the ordinance was violated when the plaintiff refused to identify himself to police officers.  *Risbridger v. Connelly*, 275 F.3d 565, 569-70 n.3 (6th Cir. 2002).  The Court therefore concludes that the officers had probable cause to arrest Mr. DeVoe and that Defendants are entitled to summary judgment with respect to Mr. DeVoe's state law false arrest claim.

**B.    Fourth Amendment Excessive Force Claim and State Law Assault and Battery Claim**

Defendants contend that they are entitled to summary judgment with respect to Mr. DeVoe's excessive force claim because their use of force was objectively reasonable under the circumstances and therefore did not violate the Fourth Amendment. Alternatively, defendants contend that they are entitled to qualified immunity.  As the Sixth Circuit has explained the qualified immunity defense:

> "A government official who performs discretionary functions is entitled to qualified immunity from civil suits for damages arising out of the performance of his official duties unless his alleged conduct violated clearly established constitutional rights of which a reasonable person would have known."

*Bennett*, 410 F.3d at 819 (quoting *Christophel v. Kukulinksy*, 61 F.3d 479, 484 (6th Cir. 1995)).

Determining whether a defendant is entitled to qualified immunity requires a three-step inquiry.  First the court must determine whether a constitutional violation has

---

such."  *Risbridger*, 275 F.3d at 568 (quoting EAST LANSING, Code, Title IX, Ch. 108, § 9.102(19)).

occurred.  *Id*. (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).  Second, the

court must decide whether the violation involved a clearly established constitutional right

of which a reasonable person would have known.  *Id*.  Third, the court must decide

"whether the plaintiff has offered sufficient evidence 'to indicate that what the official

allegedly did was objectively unreasonable in light of the clearly established

constitutional rights.'"  *Id*.

      The Fourth Amendment guarantees individuals "the right to be free from excessive

force during an arrest."  *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 173 (6th

Cir. 2004)(citation omitted).  Excessive force claims are evaluated under the Fourth

Amendment's reasonableness standard– i.e. whether the officer's actions were objectively

reasonable under the circumstances.  *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044

(6th Cir. 1992)(citing *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867

(1989)).  This reasonableness inquiry requires consideration of the particular "'facts and

circumstances of each particular case, including the severity of the crime at issue, whether

the suspect posed an immediate threat to the safety of the officers or others, and whether

he was actively resisting arrest or attempting to evade arrest by flight.'"  *Id*. (quoting

*Graham*, 490 U.S. at 396, 109 S. Ct. at 1872).  Under Michigan law, a plaintiff cannot

establish a claim of assault and battery arising out of an arrest if the police officer used

reasonable force when making the arrest.  *See VanVorous v. Burmeister*, 262 Mich. App.

467, 480-81, 687 N.W.2d 132, 141 (1994).

      In this case, as Mr. DeVoe conceded at his deposition, the only force defendants

13

used against him was Officer Sommerfeld's single discharge of his taser gun when Mr.

DeVoe refused to get into the officers' patrol car.  The Court finds the Eleventh Circuit's

decision in *Draper v. Reynolds*, 369 F.3d 1270 (2004), particularly instructive in

determining the reasonableness of the officer's use of the taser gun under the

circumstances of this case.

In *Draper*, officers stopped the plaintiff's truck for a traffic violation– specifically

improper illumination of the vehicle's tag light.  369 F.3d at 1272.  The plaintiff

immediately was belligerent with the officers, denied that he had done anything wrong,

and ignored the officer's requests for documentation.  *Id*. at 1272-73.  After the plaintiff

ignored the officers' fifth request for documentation, one of the officers discharged his

taser gun at the plaintiff's chest.  *Id*. at 1273.  The plaintiff then sued the officers, alleging

*inter alia* that the officers used excessive force in violation of federal and state law.  *Id*. at

1274.

Evaluating the plaintiff's excessive force claim, the court began by noting that "[i]t

is well settled that the right to make an arrest 'necessarily carries with it the right to use

some degree of physical coercion or threat thereof to effect it.'"  *Id*. at 1278 (quoting

*Graham*, 490 U.S. at 396, 109 S. Ct. at 1871-72).  The court further noted that "'the

calculus of reasonableness must embody allowance for the fact that police officers are

often forced to make split-second judgments– in circumstances that are tense, uncertain,

and rapidly evolving– about the amount of force that is necessary in a particular

situation.'"  *Id*.  The Eleventh Circuit then concluded that the officer's use of the taser

14

gun to effectuate the plaintiff's arrest was reasonable under the circumstances.  *Id.*

The court found the following circumstances relevant in its evaluation of the

plaintiff's claim:

> From the time Draper [the plaintiff] met Reynolds [the
> officer] . . . Draper was hostile, belligerent, and
> uncooperative.  No less than five times, Reynolds asked
> Draper to retrieve documents from the truck cab, and each
> time Draper refused to comply.  Rather, Draper accused
> Reynolds of harassing him and blinding him with the
> flashlight.  Draper used profanity, moved around and paced in
> agitation, and repeatedly yelled at Reynolds.

*Id*.  The court concluded that the officer's use of the taser gun "was reasonably

proportionate to the difficult, tense and uncertain situation that [the officer] faced in this

traffic stop, and did not constitute excessive force."  *Id*.  In this Court's view, Officers

Rebant, Wood, and Sommerfeld were faced with almost identical circumstances.

Immediately upon being approached by the officers, Mr. DeVoe was hostile and

uncooperative.  He responded to Officer Rebant's request to "come here" with an

expletive and walked away.  Mr. DeVoe repeatedly ignored Officer Rebant's requests for

identification, accusing the officer of harassing him and yelling at the officer. Even after

being handcuffed, Mr. DeVoe continue to argue with the officers and refused to comply

with the officers' verbal commands to enter the patrol car.  Attempting to physically force

Mr. DeVoe into the vehicle likely would have escalated the situation into a physical

struggle in which Mr. DeVoe or the officers could have been seriously injured. The Court

therefore concludes that Officer Sommerfeld's single use of the taser gun causing a one-

15

2:05-cv-71863-PJD-RSW   Doc # 40   Filed 02/13/06   Pg 16 of 20   Pg ID 672

time shocking which did not inflict any serious injury was a reasonable use of force
under the circumstances.

The Court also turns to the Eleventh Circuit's decision in *Draper* because the
Court finds no Supreme Court or Sixth Circuit precedent establishing whether it is proper
for police officers to use taser guns under the circumstances presented in this case. This
Court found one Sixth Circuit case addressing officers' use of a taser gun: *Rosseau v. City
of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992). In *Rosseau*, however, the court held that the
officers were entitled to qualified immunity without resolving the reasonableness of their
first use of a taser gun when the plaintiff was armed with knives, had made a number of
threatening statements to the officers, and was considered potentially homicidal *or* their
second use when the plaintiff lay at the bottom of a stairwell and posed no immediate
threat to the officers. 953 F.2d 1036, 1044-45 (6th Cir. 1992).

Mr. DeVoe fails to cite to any case where a court has found the use of a taser gun
unreasonable. Mr. DeVoe argues that the law is clearly established, however, that an
officer may not use gratuitous force on a suspect who already has been subdued and
handcuffed. *See* Resp. at 18-20 (citing *McDowell v. Rogers*, 863 F.2d 1302 (6th Cir.
1988) and *Bultema v. Benzie County*, No. 04-1772, 2005 WL 1993429 (6th Cir. Aug. 17,
2005)). The facts of both cases, however, are distinguishable from the present one. In
*Bultema*, the officers used pepper spray on the plaintiff after the plaintiff had been
slammed against a porch railing, handcuffed, was crouched down and leaning heavily
against the porch railing, and could barely stand upright. *Bultema*, 2005 WL 1993929, at

16

*6.  Similarly, the plaintiff in *McDowell* had been subdued and handcuffed and was complying with the officers when he allegedly was hit in the head with a nightstick.  863 F.2d at 1304.  While Mr. DeVoe was handcuffed when he was stunned with the taser gun, there is no genuine issue of material fact that he still was resisting the officers' commands to enter the police car and was arguing with them.

In summary, the Court believes Officer Sommerfeld's use of the taser gun was objectively reasonable under the circumstances and thus did not constitute excessive force.  But even if the officer's conduct was not reasonable, the Court finds that the conduct did not violate clearly established law.  As such, Defendants are entitled to qualified immunity with respect to Mr. DeVoe's excessive force claim.

## C.      Ethnic Intimidation

Mr. DeVoe, who is African-American, alleges that defendants are guilty of ethnic intimidation in violation of Michigan Compiled Laws § 750.147b.  Section 750.147b provides, in relevant part:

> A person is guilty of ethnic intimidation if that person maliciously, and with specific intent to intimidate or harass another person because of that person's race, color, religion, gender, or national origin, does any of the following:
>
> (a) Causes physical contact with another person.

MICH. COMP. LAWS ANN. § 750.147b(1)(a).  Defendants contend that they are entitled to summary judgment because Mr. DeVoe lacks evidence suggesting that their conduct was "malicious" or that they had the "specific intent to intimidate or harass" him because of his race.

As an initial matter, Section 750.147b is a penal statute that makes it a crime for someone to commit a criminal act because of racial or other ethnic animosity.  *See People v. Sutter*, 265 Mich. App. 423, 428, 695 N.W.2d 360, 363 (2005)(citing *People v. Richards*, 202 Mich. App. 377, 379, 509 N.W.2d 369 (1998)).  It is not clear to this Court that the statute grants a private cause of action.  In any event, because the Court has found that the officers acted lawfully, there is no underlying criminal act in this case.  Moreover, Mr. DeVoe fails to present any evidence suggesting that defendants' conduct was motivated in any degree by his race.  The Court therefore grants summary judgment to Defendants with respect to this claim.

18

**D.      Negligence, Gross Negligence, and Intentional Infliction of Emotional Distress**

Michigan's Governmental Tort Liability Act immunizes a governmental employee from tort liability for all acts performed in the exercise or discharge of a governmental function and within the scope of the employee's authority, except those acts constituting "gross negligence."  MICH. COMP. LAWS ANN. § 691.1407(2).  Mr. DeVoe's negligence claim against the individual officers therefore fails as a matter of law.[8]

Section 691.1407 defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  MICH. COMP. LAWS ANN. § 691.1407(7)(a)  In order to state a claim for intentional infliction of emotional distress, Mr. DeVoe must show *inter alia* that Defendants engaged in "extreme and outrageous conduct."  *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603, 374 N.W.2d 905, 908 (1985).  As the Court has found that Defendants acted reasonably in light of the circumstances, the Court concludes that their conduct cannot be said to be "grossly negligent" or "extreme and outrageous." The Court therefore holds that Defendants are entitled to summary judgment with respect to Mr. DeVoe's negligence, gross negligence, and intentional infliction of emotional distress claims.


For the reasons set forth above,

---

[8]As Mr. DeVoe does not address his negligence claim in response to Defendants' motion for summary judgment, the Court assumes that he concedes the claim is precluded by Section 691.1407(2).

19

**IT IS ORDERED**, that Defendants' Motion for Summary Judgment is

**GRANTED**.


                                        s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:
Paul Broschay, Esq.
Timothy Ferrand, Esq.

20